**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

BEN POITEVINT, SR.,

    Plaintiff,

v.                                            CASE NO. 1:11-cv-00076-MP-GRJ

UNITED RECOVERY SYSTEMS, LP,

    Defendant.

_____/

**O R D E R**

This matter is before the Court on Doc. 44, a motion by defendant to strike certain affidavits, Doc. 33, the defendant's motion for summary judgment, and Doc. 34, the plaintiff's motion for summary judgment. For the reasons discussed below, the motion to strike is granted in part and denied in part and the motions for summary judgment is denied.

In the instant case, plaintiff Ben Poitevint, Sr. ("Mr. Poitevint") claims that United Recovery Systems ("United") violated the Federal Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA") by allegedly making a number of phone calls to him, his daughter-in-law Judy Poitevint ("Ms. Poitevint"), and his sister in relation to collecting a debt allegedly owed by Mr. Poitevint.

The parties dispute the basic facts of the case. Mr. Poitevint's version of the facts is as follows. United, on behalf of Chase Bank U.S.A., N.A., initially began attempting to collect the debt by way of letters and phone calls directly to Mr. Poitevint, but subsequently began trying to get in touch with him by contacting members of his family. (Doc. 1 at 1-2). Mr. Poitevint claims that United made multiple calls to his sister in which United asked for his contact information. (Doc. 1 at 2). His sister was distressed by the calls and discussed them with her brother. (Doc. 1 at 2). After one such call, allegedly taking place on or about February 14, 2011, Mr. Poitevint telephoned United and asked that it stop calling his family members because it was upsetting them. (Doc. 1 at 2).

Mr. Poitevint also claims that United made multiple calls to his daughter-in-law, Judy

Poitevint. (Doc. 1 at 2). One such call allegedly took place on February 16, 2011, despite his earlier instruction to United to stop calling his family. (Doc. 1 at 2). As a result, Mr. Poitevint called United on or about February 17 and again requested that it stop calling his family members. (Doc. 1 at 3). Ms. Poitevint claims that on February 23, she found a message on her phone recorder intended for Mr. Poitevint from United. (Doc. 1 at 3). On February 24, United again allegedly telephoned her in an attempt to get in touch with Mr. Poitevint. (Doc. 1 at 3). During this call, Ms. Poitevint claims that United's representative stated that she and United "'had to make a decision'" about Mr. Poitevint, that "she had put off making her decision until she heard from him, but that since she still could not get in touch with him, she was going to 'file her decision.'" (Doc. 1 at 3) (citing Exhibit D). Ms. Poitevint allegedly told United's representative that Mr. Poitevint did not live there and requested that she stop calling her. (Doc. 1 at 3).

Mr. Poitevint further alleges that United continued to call him for many weeks thereafter. (Doc. 1 at 4). He claims that United "would often disguise its phone number, and also call from unknown numbers or from numbers that would not register on [his] caller ID." (Doc. 1 at 4). He claims that he received such calls seven days a week, up to five or six times per day. (Doc. 1 at 4).

United's version of the facts is significantly different. It claims to have placed only three calls, one each to three different numbers that it had on file for Mr. Poitevint. (Doc. 33 at 9). These calls allegedly took place on February 8, February 14, and February 16, and thus do not conform with the dates given by Mr. Poitevint. (Doc. 33 at 9). United claims that the recipient of the first call identified herself as Ms. Poitevint, the sister of Mr. Poitevint. (Doc. 33 at 9). It claims that the recipient of the second call identified herself as Ms. Poitevint but did not describe her relationship to Mr. Poitevint. (Doc. 33 at 9). Finally, United claims that the recipient of the third call did not identify herself but described herself as the daughter-in-law of Mr. Poitevint. (Doc. 33 at 10). United claims that following these calls, it made no other calls to anyone other than Mr. Poitevint. (Doc. 33 at 9). United bases its claims partly on its account notes contained in Mr. Poitevint's file. (Doc. 33 at 10). Account notes are records made by United employees each time they contact a debtor and reflect the date and subject matter of the communication. (Doc. 33 at 3).

Eventually, Mr. Poitevint filed suit, alleging that United violated the FDCPA in three different ways and that United violated the FCCPA in one way. Doc. 1. Both sides moved for summary judgment (Docs. 33 and 34), and Mr. Poitevint submitted his own affidavit (Doc. 35, attach. 3) as well as one from Ms. Poitevint (Doc. 35, attach. 4) in support of his summary judgment motion. United then filed a motion to strike portions of each affidavit. Doc. 44. In the motion to strike, United asks this court to strike portions of those affidavits because they violate (1) the personal knowledge requirement of Fed. R. Evid. 602, (2) the hearsay rules of Rules 801-804, and the sham affidavit rule developed by case law.

### Doc. 44, the Motion to Strike Affidavits of Ben Poitevint, Sr. and Judy Poitevint

According to Fed. R. Evid. 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." For a matter to be considered within a witness's personal knowledge, it must be "derived from the exercise of his own senses, not from the reports of others–in other words, [it] must be founded on personal observation'" *U.S. v. Evans*, 484 F.2d 1178, 1181 (2nd Cir. 1973) (quoting 2 Wigmore, Evidence, 3d ed. 1940, § 657).

Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Hearsay is inadmissible unless it qualifies under a variety of exceptions to the general rule. Fed. R. Ev. 802-04.

Finally, the "sham affidavit" rule provides that an affidavit can be disregarded if its conflict with other evidence in the case is so pronounced that the affidavit rises to the level of a sham. Generally, discrepancies between a witness's affidavit and deposition do not defeat the admissibility of the affidavit, but instead go toward the credibility of the witness. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11 th Cir. 1986). However, courts have recognized that "an affidavit can be disregarded when it constitutes a sham." *Id.* at 953 (citing *Van T. Junkins and Associates v. U.S. Industries*, 736 F.2d 656 (11th Cir. 1984)). An affidavit should be disregarded as a sham only "'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *Id* at 954 (citing *Van T. Junkins*, 736 F.2d at 657). The Fifth

Circuit has observed that

> every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. *See Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir. 1977) (summary judgment was improper even though party's testimony was "not a paradigm of cogency or persuasiveness," since it was not a "transparent sham"), cert. denied sub. nom. *Indiana v. Choudhry*, 434 U.S. 997, 98 S.Ct. 634, 54 L.Ed.2d 491 (1997). In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier disposition.

*Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980).

Armed with these three rules, the defendant first attacks the affidavit of Mr. Poitevint. Paragraph 9 of Mr. Poitevint's affidavit reads: "That same month, United Recovery Systems, L.P. began calling my sister, Monta, and my daughter-in-law, Judy Poitevint, at their phone numbers. United Recovery Systems, L.P., made multiple phone calls to each of these ladies." (Doc. 35, Exhibit C at 2). United correctly argues that this paragraph should be stricken because it violates the personal knowledge requirement of Rule 602. (Doc. 44 at 2). Mr. Poitevint's knowledge of the alleged calls to Monta and Judy Poitevint is not based on his own perception of those calls, as the record reflects that he was not present during the calls. Rather, he bases his knowledge on statements made to him by his sister and daughter-in-law after the fact. As such, Paragraph 9 should therefore be stricken.

Paragraph 10 of Mr. Poitevint's affidavit reads: "On or about February 14, 2011, United Recovery Systems, L.P., called my sister, Monta, my daughter-in-law Judy Poitevint, and her son and asked a lot of questions about me, claiming that they wanted my phone number so that they could ask me about my financial situation." (Doc. 35, Exhibit C at 3). United correctly argues that this paragraph does not meet the personal knowledge requirement of Rule 602, as it is not based on Mr. Poitevint's personal perception of the call. As such, Paragraph 10 is

stricken.

Paragraph 11 of Mr. Poitevint's affidavit reads: "All three of the people noted in [paragraph] 9, above, called me and asked me about this matter, and expressed a great deal of concern." (Doc. 35, Exhibit C at 3). United incorrectly argues that this statement contains inadmissible hearsay. "The hearsay rule does not operate to render inadmissible every statement repeated by a witness as made by another person. It does not exclude evidence offered to prove the fact that a statement was made, rather than the truth." *U.S. v. Anfield*, 539 F.2d 674, 678 (9th Cir. 1976). *See* Fed. R. Ev. 801(c)(2). In Paragraph 11, Mr. Poitevint refers to questions and concerns of his family members not in order to prove the truth of what was said in those communications, but merely to prove the nature of the communications and the fact that they occurred.

Paragraph 12 of Mr. Poitevint's affidavit reads: "For example, my sister Monta was upset, and worried that I might be in trouble." (Doc. 35, Exhibit C at 3). United incorrectly argues that this statement contains inadmissible hearsay. In it, Mr. Poitevint merely describes his observation concerning his sister's emotional state, and does not offer any statement by her in order to prove the matter asserted.

Paragraph 13 of Mr. Poitevint's affidavit reads, "A day or two later, on or about February 16, 2011, United Recovery Systems, L.P., called my daughter-in-law, Judy Poitevint, again. Again, they asked Judy questions about me, and again Judy called me and stated that the name of the lady who called was Nadine." (Doc. 35, Exhibit C at 3). United correctly points out that this statement fails the personal knowledge requirement. Mr. Poitevint did not directly perceive the alleged call referred to here, and so lacks knowledge under Rule 602. Further, the paragraph contains inadmissible hearsay in Ms. Poitevint's statement that "the name of the lady who called

was Nadine." Thus, paragraph 13 is stricken.

Paragraph 16 of Mr. Poitevint's affidavit reads: "However, about a week later, on February 23 or 24, 2011, United Recovery Systems, L.P. called my daughter-in-law Judy yet again, asking for me, and stating that they needed to speak to me." (Doc. 35, Exhibit C at 3). Since Mr. Poitevint did not directly perceive the alleged call referred to here, the paragraph fails the personal knowledge requirement of Rule 602 and is stricken.

Paragraph 18 of Mr. Poitevint's affidavit reads: "After that, United Recovery Systems, L.P. continued calling me, but would disguise their phone number, and also call from unknown phone numbers or from numbers that would not register on my caller I.D." (Doc. 35, Exhibit C at 4). United argues that this statement is based purely on speculation and should be stricken. Unsupported speculation does not create a genuine issue of fact for the purposes of summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). However, Mr. Poitevint's deposition provides some support for paragraph 18. In the deposition, he refers to three instances where he received calls, which he did not answer, from an unknown number for which his phone did not identify the caller. (Doc. 45, #1 at 23-27). He states that he looked up the number on his computer and found that it belonged to United. (Doc. 45, #1 at 23). There is therefore adequate support for Mr. Poitevint's statement in his affidavit that United made calls to him from unknown numbers. However, Mr. Poitevint's belief that United actively disguised its phone number is purely speculative and not supported by evidence. *See Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995). Therefore, the portion of paragraph 18 that refers to United's disguising its phone number is stricken.

Paragraph 19 of Mr. Poitevint's affidavit reads: "They would call seven days a week, often 5 or 6 times per day, and did so for many weeks." (Doc. 35, Exhibit C at 4). United argues

that this statement directly contradicts testimony made by Mr. Poitevint in his deposition and should be stricken under the sham affidavit rule.  Generally, a court should not reject an affidavit as a sham merely because it is at odds with statements made in an earlier deposition.  *Kennett-Murray*, 622 F.2d at 894.  The sham affidavit rule applies only when a witness makes a statement in an affidavit which flatly contracts a clear and unambiguous answer given in an earlier deposition to an equally unambiguous question.  *Tippens*, 805 F.2d at 954.  While paragraph 19 of Mr. Poitevint's affidavit does appear to be at odds with his deposition, it cannot be said that he has flatly contradicted a previous statement.   In the deposition, Mr. Poitevint is asked by opposing counsel to describe the calls that he personally received from United.  With the use of notes he had taken, Mr. Poitevint lists three calls that he received, taking place on February 25, March 2, and March 11.  (Doc. 45, #1 at 23-27).  He is then asked when the next call took place and responds, "I don't have anymore."  (Doc. 45, #1 at 27).  While this statement could be interpreted to mean that those were the only calls that he received from United, it could also simply mean that those were the only ones about which he had taken notes.  At another point, he is asked whether "based on the four phone calls to [his] house . . .," he feels that he was harassed by United (it appears that one of the four calls referred to here is one that he made to United, not vice versa). (Doc. 45, #1 at 34).  He responds, "Yes, I do."  (Doc. 45, #1 at 34).  Again, it appears that Mr. Poitevint is acquiescing to receiving only four calls from United, but his answer is not an unambiguous endorsement of this view.  Nowhere in the deposition does Mr. Poitevint mention receiving calls seven days a week, five or six times per day, but this inconsistency is one for the fact-finder to consider.  The motion to strike is denied with regard to this paragraph.

       The court now turns to Ms. Poitevint's affidavit and the arguments put forth by United in

*Case No: 1:11-cv-00076-MP-GRJ*

favor of striking its provisions. The first sentence of paragraph 3 of the affidavit reads: "On February, 2011, on about the 16th of the month, I received a phone call for a Ben Poitevint." (Doc. 35, Exhibit D at 1). United points to the fact that Ms. Poitevint identifies the date of the first call as February 14th in her affidavit. (Doc. 45, #2 at 7) (identifying date of first call as "approximately around the 14th"). This inconsistency clearly does not warrant application of the sham affidavit rule, since in both of these statements Ms. Poitevint has merely given a rough date of the call. There is no outright contradiction.

The second line of paragraph 4 of Ms. Poitevint's affidavit reads: "She said her name was Nadine." (Doc. 35, Exhibit D at 1). United argues that the sham affidavit rule should apply to this sentence. It points out that in Ms. Poitevint's deposition, she states that the first caller did not identify herself. (Doc. 45, #2 at 7). She states that the second caller likewise did not identify herself, and it was not until the third call that she received that she asked for and was told the identity of the caller. (Doc. 45, #2 at 19-20). Courts have emphasized that an affidavit should not be disregarded merely because it is "not a paradigm of cogency or persuasiveness" as long as it is not a "transparent sham." *See Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th cir. 1977). The court is not convinced that the discrepancy discussed above rises to the level of a transparent sham. After all, such a minor inconsistency is unlikely to substantially affect the court's analysis on summary judgment, and does not give the plaintiff any appreciable advantage.

Paragraph 5 of Ms. Poitevint's affidavit reads:

> After the call concluded, I called Ben Henry Poitevint, Sr. on his home phone and reported to him what was said. It upset him a great deal that these calls were being made to his neighbors and family members. I learned from him later that he called United Recovery Systems, L.P. and told them to stop calling his neighbors and relatives.

(Doc. 35, Exhibit D at 1). United argues that this paragraph is not based on personal knowledge

and contains inadmissible hearsay.  The only sentence that implicates those rules is the final one.  Ms. Pointevint's did not have knowledge of Mr. Poitevint's call to United and the subject of that call until informed by Mr.Poitevint.  The sentence thus fails to satisfy the Rule 602 personal knowledge requirement and is stricken.

Paragraph 6 of Ms. Poitevint's affidavit reads: "On February 23, 2011, I checked my phone recorder and there was a message on my phone recorder for Ben Poitevint.  I recognized the voice and it was Nadine calling and leaving a message on my phone stating that she need to talk to Ben Poitevint."  (Doc. 35, Exhibit D at 2).  United argues that this paragraph should be stricken because it contradicts Ms. Poitevint's testimony in her deposition that she did not learn the name of the caller until the third call.  As discussed, the sham affidavit rule does not apply to every inconsistency between an affidavit and a deposition, only those that represent transparent shams.  *Choudhry*, 559 F.2d at 1090.  It is not applicable here.

In paragraphs 7-13 of Ms. Poitevint's affidavit, she discusses a call that allegedly took place on February 24 from Nadine.  Ms. Poitevint gives various details of the subject matter of that call, including a statement by Nadine that she "'had to make a decision' about [Mr. Poitevint] and that, since she had not gotten a response from the message left th e day before, she had put off making her decision until she heard from him . . . ."  (Doc. 35, Exhibit D at 2).  United points to various inconsistencies between Ms. Poitevint's affidavit and her deposition, such as the contradictory dates given and the fact that Ms. Poitevint did not mention the above statement by Nadine during her deposition.  However, Ms. Poitevint made clear in her deposition that she did not have concrete knowledge of the date of this call, noting that it occurred "probably around the 20th."  As such, there is no real contradiction there.  The rest of paragraphs 7-13 simply consist of Ms. Poitevint fleshing out the details of the alleged call that she discussed

in less detail in her deposition.  The sham affidavit rule is inapplicable.

      Paragraph 14 of Ms. Poitevint's affidavit reads:

> Nadine never stated in any of these phone calls that she was calling from United Recovery Systems, L.P.  However, I later gave the number she had called from to [Mr. Poitevint] and he confirmed that it belonged to United Recovery Systems, L.P.  He was very distressed that United Recovery Systems, L.P. continued to call his family members after he told them to stop doing so.

(Doc. 35, Exhibit D at 3).  United argues that the first sentence contradicts Ms. Poitevint's deposition testimony, in which she made the following statement: "So I ask her name.  Her name is Nadine.  That's when she tells me who she's working for . . . ."  (Doc. 45, #2 at 20).  However, shortly thereafter, opposing counsel asked Ms. Poitevint, "Who did she tell you that she worked for?"  (Doc. 45, #2 at 20).  Ms. Poitevint responded, "She told me that she worked for credit recovery – credit recovery.  Maybe that's all she did say."  (Doc. 45, #2 at 20).  So, while Ms. Poitevint initially suggested that Nadine identified her employer, she corrected herself and noted that Nadine may have only identified her occupation.  Therefore, her affidavit does not contradict her deposition testimony enough to trigger the sham affidavit rule.

      United further argues that the final sentence of the paragraph should be stricken because Ms. Poitevint did not directly observe Mr. Poitevint being "distressed" by United's calls to his family members.  However, knowledge does not have to be based on visual observation to satisfy Rule 602.  Ms. Poitevint was perfectly capable of ascertaining Mr. Poitevint's mental state by noting his reaction over the phone.

      However, paragraph 14 contains a hearsay statement in the second sentence, in which Ms. Poitevint states that Mr. Poitevint confirmed that the number she recited to him belonged to United.  Since Mr. Poitevint's confirmation, whatever its form, was an out-of-court statement put forward to prove the matter asserted, namely that the number belonged to United, it is

inadmissible hearsay.  This sentence is thus stricken.

The court thus grants United's motion to strike in part and denies it in part.  Specifically, the court strikes the following statements:  regarding Mr. Poitevint's affidavit, the court strikes paragraphs 9, 10, 13, 16, and the part of the first sentence of paragraph 18 in which Mr. Poitevint speculates that Untied disguised its number; regarding Ms. Poitevint's affidavit, the court strikes the last sentence of paragraph 5 and the second sentence of paragraph 14.

### Docs. 33 and 34, competing motions for summary judgment

In Count I of Plaintiff's Complaint, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692b and 1692(c)(b) by contacting a third party for purposes other than obtain location information. See, Plaintiff's Complaint at ¶ 17. The factual support for this allegation appears in paragraph 11 of Plaintiff Complaint in which Plaintiff alleges "[i]n connection with an attempt to collect an alleged debt from Plaintiff, Defendant, via its agent and/or employee, contacted Plaintiff's daughter-in-law, a third party, for purposes other than obtaining location information and informed said third party that Defendant 'had to make a decision about [Plaintiff] and since [Defendant] had not gotten a response from [Plaintiff], [Defendant] had put off making a decision' until Plaintiff was heard from."  The defendant moves for summary judgment because its computerized Collection Activity Records do not contain evidence of a call in which the above statement was made.  Defendant argues:

> the only conversation that occurred between the Defendant and the Plaintiff's daughter-in-law, which was recorded and transcribed, reveals both that Defendant was in fact contacting this third party in an attempt to acquire location information and that the dialog quoted in the Plaintiff's complaint never occurred. Specifically, regarding Plaintiff's location, Defendant stated "[a]nd he's living in Bradford right now?" to which the Plaintiff's daughter-in-law responded "No. That must be his father. There's two of them." At no time whatsoever during the course of this single, brief conversation between Defendant and the Plaintiff's daughter-in-law do the words "decision," "response," "put off", or "heard" ever

appear, contrary to the facts as pled by the Plaintiff.

Doc. 33, p. 4.  However, even without the stricken portions of her affidavit, Ms. Poitevint offers testimony which puts at issue whether the Collection Activity Records are complete and reflect all of the phone calls actually made.  Thus, summary judgment is inappropriate for either side on Count I.

In Count II of Plaintiff's Complaint, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692(b)(3) and 1692(c)(b) by communicating with a single third party more than once in connection with an attempt to collect an alleged debt from Plaintiff.  The factual support for this allegation is contained in paragraphs 12 of the Plaintiff's Complaint in which Plaintiff alleges that "Defendant communicated with Plaintiff's sister and daughter-in-law, both third parties, on no fewer than three (3) occasions, including, but not limited to, the following dates: February 17, 2011, February 23, 2011, and February 24, 2011."

As an initial matter, all testimony and evidence relating to the sister has been stricken as based on hearsay and not reflecting personal knowledge.  No testimony from the sister has been offered by the plaintiff. With regard to the daughter-in-law, the defendant again resorts to it Collection Activity Records, and argues:

> URS's account history notes and the transcript reveal that URS placed three (3) telephone calls to three (3) separate and distinct telephone numbers and had three (3) conversations with people other than Plaintiff in attempts to ascertain location information about Plaintiff.

Doc. 33, p. 8.  As with Count I, the non-stricken portions of the affidavit of Ms. Poitevint alleges three calls to her number on three different dates.  Thus, the affidavit offers testimony which puts at issue whether the Collection Activity Records are complete and reflect all of the phone calls actually made.  Thus, summary judgment is inappropriate for either side on Count II.

The same conclusion applies to Count III. In Count III, Plaintiff alleges that "Defendant violated 15 U.S.C. 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff." See, Plaintiff's Complaint at ¶ 21. The factual allegations to support this contention appear in paragraph 13 and 14 of the Plaintiff's Complaint in which he states that he "requested via telephone conversation that Defendant cease and desist communications with the Plaintiff's family" and that "[n]otwithstanding Plaintiff's request that the Defendant cease and desist such communication, Defendant continued to communicate with Plaintiff's family with such frequency as would reasonably expected to harass the Plaintiff and the Plaintiff's family." Since defendant's response is entirely dependent on its Collection Activity Records, this Count is not appropriate for summary judgment for the same reasons given above.

In Count IV, Plaintiff alleges that Defendant "violated §559.72(7) of the Florida Consumer Collections Practices Act by willfully communicating with a debtor or any member of his family with such frequency as would reasonably be expected to harass the debtor or the debtor's family, or such other conduct reasonably expected to abuse or harass the debtor or any member of the debtor's family." See, Plaintiff's Complaint at ¶ 23. The factual allegations that support this allegation are the same as those used to support the Plaintiff's harassment claims under the FDCPA in Count III. Thus, the result on summary judgment is also the same.

In sum, even with the partial striking of the affidavits offered by plaintiff, genuine issues of material fact exist preventing the granting of summary judgment for either side.  Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

1.  Doc. 44, the motion to strike affidavits, is granted in part and denied in part.

2.  Docs. 33 and 34, the parties' cross motion for summary judgment, are DENIED, and the Clerk is directed to set the case for pretrial conference.

**DONE AND ORDERED** this _26th_  day of September, 2012

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge